### J. Weinstein, Trading as J. Weinstein & Son, Appellee, v. Joseph Lotsoff, Appellant.

### Gen. No. 28,762.

1. HUSBAND AND WIFE—*wife's funeral expenses as claim against husband*. The husband, not the estate of the wife, is primarily liable for the expenses of the wife's funeral.

2. HUSBAND AND WIFE—*liability for wife's funeral contracted for by others*. A husband is liable for the expenses of his wife's funeral though the arrangements were made with plaintiff by, and credit extended to, children of the wife by a former husband.

3. HUSBAND AND WIFE—*basis of husband's liability for wife's burial*. The obligation of a husband to bury his deceased wife is based on the ground of common decency and is broader than his duty to furnish her with necessaries.

4. HUSBAND AND WIFE—*burden of proof in action against husband for cost of wife's burial*. The obligation which rests upon one who furnishes necessaries to a wife who is living apart from her husband to show, in a suit to recover therefor from the husband, that the separation was not through the wife's fault, does not exist in a suit to recover expenses of her funeral.

5. HUSBAND AND WIFE—*liability of husband for burial of separated wife.* A husband is liable for the expenses of burial of his wife who was living apart from him though the separation was because of her fault.

6. HUSBAND AND WIFE—*sufficiency of proof of value to charge husband for wife's burial casket.* In an action to recover expenses incurred in the burial of defendant's wife who was living apart from him, held, that the price of the casket was not satisfactorily proved by contradictory testimony of the undertaker which left it uncertain how much was paid.

7. HUSBAND AND WIFE—*essential proofs to charge husband for cost of wife's funeral.* To enable an undertaker to recover the expenses of the funeral of defendant's wife which was not ordered by him it is essential that he prove that the expenses of the funeral were suitable to the condition and station of life of the husband.

Appeal by defendant from the Municipal Court of Chicago; the Hon. EMANUEL ELLER, Judge, presiding. Heard in the first division of this court for the first district at the October term, 1923. Reversed and cause remanded. Opinion filed April 14, 1924.

FRANK T. McDERMOTT, for appellant; ERNEST SAUNDERS, of counsel.

SLOTTOW & LEVITON, for appellees; CHARLES LEVITON, of counsel.

MR. JUSTICE JOHNSTON delivered the opinion of the court.

This is an appeal by the defendant, Joseph Lotsoff, from a judgment of the municipal court of the City of Chicago, in the sum of $490.90, in an action brought by the plaintiff, J. Weinstein, trading as J. Weinstein & Son, to recover from the defendant the cost of funeral expenses incurred by the plaintiff in burying the deceased wife of the defendant. At the time of the death of the wife, she was living apart from her husband. A son of the wife by a former marriage, referred to as "Mr. Stamm," together with other children by the former marriage, employed the plaintiff

tiff to conduct the funeral. The funeral expenses amounted to $490.90.

The defendant asks for a reversal of the judgment on several grounds. One of the contentions of counsel for the defendant, and the one which logically should be considered first, is that the defendant is not primarily liable for the funeral expenses; that the estate of the wife is primarily liable. In support of their contention counsel for the defendant, cite the case of *Stevens v. Williamson*, 222 Ill. App. 258, in which the opinion was rendered by the second division of this court. The language of the opinion on which counsel for the defendant rely is as follows (p. 260): "The services of an undertaker and the necessary funeral articles must be furnished immediately. It is intended by the law that these things should be done upon the credit of the estate rather than that there should be any hesitation in rendering the services and furnishing the necessary articles until inquiry can be made as to who is liable to pay and his financial responsibility. This rule has been followed from a very early date in Massachusetts. *Fogg v. Holbrook*, 88 Me. 172, and authorities cited. The same rule has been followed in this State, so far as we know, without exception."

The language of the court is broad enough to admit of the construction placed upon it by counsel for the defendant. But we do not think that the court intended to hold generally that if a wife of a lawful husband dies leaving the husband surviving, the estate of the wife is primarily liable for her funeral expenses and not the husband. The court was not considering the question whether a lawful husband was primarily liable for the funeral expenses of his wife. The husband in the case under consideration by the court was not a lawful husband, as his marriage was void because it took place within a year after a divorce had been obtained by the wife from a former husband. If, however, the court intended to

hold that the general rule is that the estate of a wife is primarily liable for her funeral expenses, and not the husband, such a holding would be contrary to the overwhelming weight of authority.

"It may be stated as an elementary proposition, the husband is liable for the reasonable funeral expenses of his wife, whether or not she may have had property of her own, and that he cannot, upon paying such expenses, charge the same to her separate estate * * *. From this it will be seen that in order to render the wife's separate estate liable, an exception must be made to that rule." 37 L. R. A. (N. S.) p. 754.

"There is no doubt as to the liability of the husband at common law for the funeral expenses of the wife." 6 L. R. A. (N. S.) p. 917.

The cases holding that at common law the husband is under a legal obligation to bury his deceased wife are too numerous to be set out in detail. A collection of many of the cases may be found in the following digests and text-books: 21 Cyc. p. 1233; 13 R. C. L. sec. 247, p. 1213; 11 R. C. L. sec. 251, p. 225; 15 Amer. & Eng. Encyc. of Law, p. 880 (2nd ed.); 30 C. J. sec. 156, p. 606; I Schouler on Marriage, Divorce, Separation and Domestic Relations, sec. 114, p. 139 (6th ed.); Schouler on Husband and Wife, sec. 412, pp. 443, 444; Bishop on Marriage, Divorce and Separation, sec. 1258, p. 538.

The decisions which hold that the estate of the wife is primarily liable for her funeral expenses constitute exceptions to the general rule, and are based on statutes making funeral expenses a charge against a decedent's estate, and establishing the independent position of married women in regard to their property. 13 R. C. L., sec. 248, p. 1214; 6 L. R. A. (N. S.) p. 918.

In the case of *Stevens v. Williamson, supra,* the court referred to the fact that in Massachusetts the rule is that the wife's estate is liable for her funeral expenses. That rule, however, is based on the general statutes of Massachusetts providing for the payment

of funeral expenses out of the decedent's estate and the statutes establishing the independent position of married women. *Constantinides v. Walsh,* 146 Mass. 281, 282. Prior to the statutes, the common law rule was recognized in Massachusetts that the husband was under a legal duty to bury his deceased wife. *Cunningham v. Reardon,* 98 Mass. 538, 539.

In the case of *Stevens v. Williamson, supra,* the court stated that the Massachusetts rule holding that the wife's estate was liable for her funeral expenses had been followed, without exception, in Illinois. As far as we are able to discover, the question has not been decided by the Supreme Court of Illinois. The question has been decided in cases in Appellate Courts of Illinois, namely, in the case of *Seybold v. Morgan,* 43 Ill. App. 39, 40, 41, and in the case of *Gustin v. Bryden,* 205 Ill. App. 204, 221, but those cases expressly hold that the expenses for the funeral of a wife are a primary liability of the husband. The court in the case of *Gustin v. Bryden, supra,* after a careful and extensive review of the authorities, explicitly holds further (pp. 216, 217) that the Married Women's Act in Illinois and the statute classifying claims for funeral expenses as claims of the first class against estates, do not relieve the husband of his common-law liability to pay the funeral expenses of his wife.

Counsel for the defendant maintain that even if it is the rule that the husband is primarily liable for the funeral expenses of his wife, the husband is not liable in the case at bar, because of the fact that the children of the wife by a former marriage made the arrangements for the funeral with the plaintiff, and that as credit was given by the plaintiff to the children, the plaintiff should look to them for payment. The authorities are against the contention of counsel for the defendant. It is the rule that "The common law casts on the surviving husband the duty and legal obligation of burying his deceased wife and of com-

pensating or reimbursing a third person performing services or incurring expenses in this respect, suitable to the rank and fortune of the husband." 15 Amer. & Eng. Encyc. of Law, p. 880 (2nd ed.). It is also the rule that "A third person defraying a wife's funeral expenses may recover from the husband the amount expended." I Schouler on Marriage, Divorce, Separation and Domestic Relations, sec. 114, p. 139. Furthermore the rule as to notice is thus stated in Corpus Juris: "Notice of the death is not required in order to hold the husband liable. The husband is liable although the wife is buried without his knowledge or request." 30 C. J., p. 607. It has been held that "The husband surviving is bound to bury the corpse of his wife; and in his absence, another, a relative, with whom she has lived up to her death, having directed the funeral and paid the expense, may recover it from the husband." *Patterson v. Patterson,* 59 N. Y. 574, 583.

It is further contended by counsel for the defendant that even though the husband is primarily liable to defray the funeral expenses of his wife, he is absolved from that duty if his wife is living apart from him, through her own fault, at the time of her death; that in the case at bar the wife was living apart from her husband, the defendant; and that the burden of proof rests upon the plaintiff, who is seeking to hold the husband liable, to show that the wife was not living apart from her husband through her own fault. The questions raised by counsel for the defendant have not been decided by the Supreme Court of Illinois.

There is no affirmative evidence that the wife was living apart from her husband, the defendant, at the time of her death. The court stated during the examination of the defendant: "He says she was separated." But the record does not show that the defendant did so testify, although the record does show that he did testify to that effect when he stated that

"she wasn't divorced." Counsel for the plaintiff and counsel for the defendant have assumed that the fact that the husband and wife were living apart was shown by the evidence. We think that the record may be considered as showing that there was a separation. There is, however, no evidence as to the cause of the separation, whether it was by consent, through the fault of the wife, or through the fault of the husband. According to the contention of counsel for the defendant, the burden of proof rests upon the plaintiff to show that the cause of separation was not due to the wife. Whether the burden of proof also requires the plaintiff to show that the wife and the defendant were separated is not argued by counsel for the defendant although it is involved in his contention. If the duty of the husband to defray the funeral expenses of his wife rests on the same principle as the duty to furnish necessaries to his wife, as is held by some authorities, then logically it would follow from the rule announced in the case of *Rea v. Durkee,* 25 Ill. 503, that the burden of proof is imposed upon the plaintiff to show that the wife was not living apart from the defendant through her own fault; for in *Rea v. Durkee, supra,* it was held (p. 506) that where necessaries were furnished to a wife living apart from her husband, the burden of proof rested upon the person furnishing the necessaries to show that the husband was liable, the presumption being that he was not unless the wife was deserted by the husband. It is doubtful, however, whether the case of *Rea v. Durkee, supra,* holds that the additional burden rests on the person furnishing necessaries to a wife living apart from her husband to show that the husband and wife are living apart. Apparently the opinion in the case of *Rea v. Durkee, supra,* implies that before the burden is imposed upon the person furnishing the necessaries to show that the wife is not living apart from her husband through her own fault, it must appear that the

person knew that the husband and wife were living apart. This conclusion would seem to be justified from the following language in the case of *Rea v. Durkee, supra* (p. 506): "If the wife, without sufficient cause, deserts her husband, he is not liable, and it is for all persons *knowing that the parties live separate,* to know whether the wife had cause to desert her husband." In language slightly conflicting with this, it is also said in the opinion in *Rea v. Durkee, supra* (p. 506), that, "Where goods are supplied to a woman living separate from her husband, it devolves upon the person giving the credit to show that the husband is liable, the presumption being that he is not, unless she is deserted by the husband." But when the two expressions of the court are considered together, it would seem that the person giving credit was not required to overcome the presumption arising from the separation unless it was shown that the person knew of the separation. In other words, a fair interpretation of the opinion in the case of *Rea v. Durkee, supra,* would seem to be this: that it must be shown first that the person furnishing necessaries to the wife living apart from her husband knew that the husband and wife were living apart; that then, since, from the fact that they were living apart, it is presumed that the separation is due to the fault of the wife, and not of the husband, the burden rests on the person furnishing the necessaries to the wife to overcome the presumption and to show that the separation was not through the fault of the wife. That this burden is not imposed on the person furnishing the necessaries unless the person knew that the husband and wife were living apart, seems to be the interpretation which the court, in the case of *Bevier v. Galloway,* 71 Ill. 517, placed upon the decision in the case of *Rea v. Durkee, supra.* In the case *of Bevier v. Galloway, supra,* in speaking of the physician, in that case, who furnished medical services to a wife living apart from her husband, the

court said (p. 518): "At the time he was employed, he knew that she had been living apart from her husband since the winter of 1870." The court said further (p. 519): "The plaintiff knew, as he testifies, that Mrs. Bevier was living apart from her husband, and knowing this fact, he was bound to know whether she had cause for so absenting herself or not, and having rendered the services to and for her, under these circumstances he cannot hold the defendant liable." In support of their opinion, the court cited the case of *Rea v. Durkee, supra.*

In the case of *Mullally v. Lott,* 162 Ill. App. 533, in which the question whether a husband was liable to a person furnishing necessaries to his wife and child was involved, the court quoted with approval (p. 536) the language of the opinion in the case of *Bevier v. Galloway, supra,* to the effect that the plaintiff knew that the husband and wife were living apart.

Our interpretation of the case of *Rea v. Durkee, supra,* is in accord with the decision in the case of *Brown et al. v. Mudgett,* 40 Vt. 68, which holds (p. 71, 72) in regard to a separation of husband and wife, that "if she refuse to live with and desert him, in violation of her duty, and without reasonable or just cause, she cannot bind him to pay for necessaries furnished her by a party knowing they live separate and apart." It has been held, however, to the contrary, that although a person who furnished necessaries to a wife living apart from her husband had no knowledge of the separation, that fact would not relieve such person from the burden of proving affirmatively the special circumstances which would fix the husband's liability. *Vusler v. Cox,* 53 N. J. L. 516, 519.

If the same rules should be applied to the plaintiff in the case at bar as are applicable to a person suing a husband for necessaries furnished to his wife while she was living apart from him, we are of the opinion, on the authority of *Rea v. Durkee, supra,* that if it

was shown that the plaintiff knew that the husband and wife were living apart, the burden would rest on the plaintiff to prove that the separation was not due to any fault on the part of the wife. But we do not think that in a case, such as the one at bar, where the husband is sued for the expenses incurred by a third party in burying the husband's deceased wife who was living apart from him at the time of her death, the same rules should apply as in the case where a person furnished necessaries to a wife who was living apart from her husband. The ground of the husband's liability for his wife's necessaries is by some authorities said to be that of agency. "But" says Schouler "in truth such necessity transcends all the analogies of an authorized representation, and inasmuch as the wife has no property and is legally dependent on her husband, a right to supply her wants upon his credit is inferred from the nature of her situation." I Schouler on Marriage, Divorce, Separation and Domestic Relations, sec. 84, p. 106 (6th ed.). It is stated in Corpus Juris that "It is doubtful if there is any presumption of agency on the part of the wife to pledge her husband's credit for necessaries, arising from the marriage contract alone, independently of the conjugal relation and cohabitation." 30 C. J., p. 591. It is also stated in Corpus Juris that "The authority of the wife as well as the liability of the husband, results from the duty imposed upon the husband by law as an incident of the marriage relation." 30 C. J., p. 591. To the same effect is 15 Amer. & Eng. Encyc. of Law, p. 876 (2nd ed.).

The true reason of the rule which at common law imposes the legal obligation on the husband of furnishing necessaries to his wife, as stated by Schouler, is "that she may not become a burden to the community." He adds: "So long as that calamity is averted, the wife has no direct claim upon her husband under any circumstances whatever; for even in the case of positive

starvation she can only come upon the parish for relief; in which case the parish authorities will insist that the husband shall provide for her to the extent of sustaining life." I Schouler on Marriage, Divorce, Separation and Domestic Relations, sec. 83, p. 106 (6th ed.).

In addition to protecting the public against the expense of burial, there are other and materially different reasons why a husband should bury his deceased wife. The duty is obviously an imperative duty. It is a duty which must be performed without delay either by a private individual or by the public. Common decency and the health and comfort of the community require that this duty should be discharged by some one. By well established custom, the duty of burying his deceased wife is imposed primarily on the husband, who is the person nearest to his wife, or as the phrase is *persona conjuncta* with his wife.

The courts are not unanimous by any means in holding that the reason of the rule requiring the husband to bury his deceased wife is founded on the same principle that obligates the husband to support his wife and furnish her necessaries while living. It may be that the greater number of the decisions agree that the two duties imposed on the husband are similar in principle. 30 C. J., sec. 156, p. 607. But there are excellent authorities which state the reason of the rule differently, and which place the reason of the rule on better and more appropriate grounds. According to these authorities, the obligation of the husband to bury his deceased wife is placed on the grounds of common decency, the interest of society, the protection of the public against expense, the near relation which the husband bears to his wife (*persona conjuncta*), the health and comfort of the public, the laws of nature and society. It is said that the obligation of the husband to bury his deceased wife is "placed on a broader ground" than that of the duty

to furnish necessaries to his wife, "namely, on the ground of common decency." 15 Amer. & Eng. Encyc. of Law, p. 880 (2nd ed.). In Corpus Juris it is stated that "The obligation of the husband is sometimes placed, in whole or in part, on the ground of common decency." 30 C. J., sec. 156, p. 606.

In *Stonesifer v. Shriver,* 100 Md. 24, the court said (p. 30): "The duty of a husband to bury his wife in a suitable manner is involved in the obligation to maintain her while living, and *rests also* upon a due regard for the decencies of life and the health of the public." In *Sullivan v. Horner,* 41 N. J. Eq. 299, the court said (pp. 302-303): "In the interest of society, out of a proper regard to its proprieties and decencies, and to protect the public against the expense, and put it where it of right should fall, the reasonable expense of the funeral of the wife or child may be included in that of the husband or father."

In the case of *Toppin v. Moriarity,* 59 N. J. Eq. 115, the court said (p. 119): "In his character of husband he, first of all, because he is nearest to her, is, by the law of nature, charged with the duty" of the burial of his deceased wife.

In the case of *Butterworth & Sons v. Teale,* 54 Wash. 14, the court said (p. 16): "The cases with substantial uniformity agree that at common law a husband was personally liable for the funeral expenses of his wife * * *. But, while the courts agree substantially on the rule, they are not so unanimous as to the reasons for the rule, or as to the grounds upon which it rests. In the Georgia case cited it was held that the duty of the husband to defray the funeral expenses of the wife grew out of the obligation of the husband to furnish the wife with the necessaries of life; while in others it is based on the ground of duty arising from the relation of the parties." The court held (p. 17) that the latter view was the correct one.

In the case of *Gould v. Moulahan,* 53 N. J. Eq. 341, the court said (p. 343) that the liability of the hus-

band "for the expense of the interment does not arise in virtue of any interest he may have in the wife's property, but for the personal advantage it is to himself to have, those *personae conjunctae* with him, his wife and lawful children, properly maintained during life, and suitably buried at death."

In the case of *Chapple v. Cooper*, 13 M. & W. 252, the court said (p. 259): "There are many authorities which lay it down that a decent Christian burial is a part of a man's own rights; and we think it is no great extension of the rule to say, that it may be classed as a personal advantage, and reasonably necessary to him. * * * If then this be so, the decent Christian burial of his wife and lawful children, who are the *personae conjunctae* with him, is also a personal advantage and reasonably necessary to him; and then the rule of law applies, that he may make a binding contract for it."

In the case of *Jenkins v. Tucker*, 1 H. Blackstone, p. 91, in speaking of the duty of a husband to bury his deceased wife, Lord Loughborough said (p. 94): "I think there was a sufficient consideration to support this action for the funeral expenses, though there was neither request nor assent on the part of the defendant, for the plaintiff acted in discharge of a duty which the defendant was under a strict legal necessity of himself performing, and which common decency required at his hands."

In the case of *Ambrose v. Kerrison*, 70 E. C. L. 775, the court said (p. 778): "There can be no question that the undertaker who performs a funeral may recover from the executor of the deceased (having assets) the reasonable and necessary expenses of such funeral without any specific contract. That liability in the executor is founded upon the duty which is imposed on him by the character which he fills, and the proper regard to decency and the comfort for others; and I think that the same reasons, which call upon the executor to perform the duty, cast at least an

equal responsibility upon the husband of a deceased wife, and, without any express authority or request on his part, compel him to recoup one who has performed the funeral.''

In the case of *Bradshaw v. Beard,* 104 E. C. L. 344 (12 C. B. N. S.) the court said (p. 347): ''It seems to me not to be at all unreasonable but, on the contrary, quite reasonable and proper, that the husband should be bound to provide a Christian burial for his wife. According to our law, every person is entitled to a place where his bones may be at rest. Prima facie, every person has a right to be buried in the churchyard of the parish in which he dies.  *  *  * It was held by the court of the Queen's Bench that every person dying in this country and not without certain ecclesiastical prohibitions, is entitled to Christian burial.  *  *  * Where the deceased has a husband, the performance of that last act of piety and charity devolves upon him. The law makes that a legal duty which the laws of nature and society make a moral duty.''

Since we are of the opinion that the reason of the rule imposing the duty on the husband to bury this deceased wife should be placed on different grounds from the reason of the rule requiring the husband to furnish necessaries to his wife, it follows that the rule, that it is incumbent on those furnishing necessaries to a wife living apart from her husband to prove that the separation was not due to the fault of the wife, does not apply in the case at bar. We do not think that the husband in the case at bar is relieved from the duty of burying his deceased wife even though she is living apart from him through her own fault at the time of her death. Her body must be buried either by the husband, by charity or by the public. The husband is primarily under the duty to bury the body; and if the body is buried by a third person, such person may recover the expenses of the funeral from the husband whether the husband was

notified of the death or whether he had no knowledge of the death. In either event, he is not relieved of the obligation to defray the expense of burial. 30 C. J., p. 607. An undertaker who, as in the case at bar, was directed by the children of the deceased wife by a former marriage to conduct the funeral of the deceased wife, may recover from the husband the reasonable and suitable expenses for the funeral. The duty is not imposed upon the undertaker of proving that the wife at the time of her death was living apart from her husband without her fault. Obviously, there is neither time nor opportunity for an undertaker to ascertain who was at fault in the separation. As was said by Judge Cooley in the case of *Sears v. Gidday,* 41 Mich. 590 (p. 592), which involved the question of a husband's liability for the funeral expenses of his wife: "A funeral cannot be delayed for judicial inquiries to determine upon whom the moral obligation to proceed with it rests most heavily. Nor if husband and son quarrel about the expense over the grave of the wife and mother, can the undertaker be compelled to await a judicial adjustment of their dispute. The husband being liable to him, he need look no further."

The conclusion which we have reached, that the husband is not relieved from his duty to bury his deceased wife, although she is living apart from him through her own fault, is supported by express authority.

In the case of *Seybold v. Morgan,* 43 Ill. App. 39, it was held (p. 41) that the husband was liable for the funeral expenses of the wife, though at the time of her death she lived apart from him of her own fault.

The case of *Bradshaw v. Beard, supra,* is to the same effect. Speaking of the separation of the husband and wife, the court said (p. 347): "They were not parted by mutual consent; nor did the wife leave her husband's roof in consequence of any cruelty or other misconduct on his part; but she left voluntarily under very peculiar circumstances, and she died in

the house of her brother, where she had resided for a considerable number of years; and upon her death he buried her in a manner suitable to her position in life.''

According to Bishop, ''Burial for a wife is in all circumstances a necessary with which the husband is chargeable. It is so even where she was living separate from him through her fault.'' (I Bishop on Marriage, Divorce and Separation, sec. 1258, p. 538.) In 15 Amer. & Eng. Encyc. of Law, p. 880, it is stated that the common law casts on the surviving husband the duty of burying his deceased wife and that the rule ''applies though at the time of her death the wife was living apart from her husband, whether by reason of his desertion or cruelty or her own volition.''

It is objected by counsel for the defendant that the plaintiff has not proved by a preponderance of the evidence that the cost of the various articles in the bill for the funeral expenses were reasonable. The evidence in this respect is very meager and unsatisfactory, but we are inclined to the opinion that a prima facie case has been made as to the reasonable cost of all of the items except that of the casket. The only testimony in regard to the cost of the casket was given by the plaintiff. His testimony is contradictory and indefinite. On direct examination he testified as follows: ''One of the sons went with me to the factory and bought the casket from Hornthal. I don't remember the price. I don't remember anything of that bill. I have seen the casket. It was oak. It was 6 feet 3. I can't remember exactly what he bought. * * * The son was Mr. Stamm, one of the children.'' On cross-examination the plaintiff testified: ''I just remember an oak casket. Mr. Stamm picked up this casket and said he liked this one.'' On redirect examination the plaintiff testified as follows: ''Q. At the time you were at Hornthal & Company did you pick out a casket? A. Yes. Q. This is the casket, $265 was it? A. Yes sir. Q.

And did you pay $265 to Hornthal for that? A. Yes, sir.''

In view of the contradictory and unsatisfactory testimony of the plaintiff we do not think that his testimony as to the price of the casket, on redirect examination, will justify the presumption that the price paid for the casket was a reasonable charge. Counsel for the plaintiff cite cases in which it is held that proof of the price paid for property is sufficient evidence of the value of the property in the absence of other testimony. That is the correct rule. *Johnson v. The Canfield-Swigart Co.,* 292 Ill. 101, 111, 112; *Terre Haute & Ind. R. R. Co. v. Smith,* 65 Ill. App. 101, 104. But we are of the opinion that the price of the casket in the case at bar has not been satisfactorily proved.

Counsel for the defendant further contend that even if the plaintiff has proved that the expenditures for the funeral were reasonable, he has not shown that the expenditures were suitable to the condition and station of life of the husband, the defendant. We are of the opinion that in order that the plaintiff may recover it is essential that he should prove by a preponderance of the evidence that the expenses of the funeral were suitable to the condition and station of life of the husband, the defendant. I Bishop on Marriage, Divorce and Separation, sec. 1258, p. 538; 15 Amer. & Eng. Encyc. of Law, p. 880 (2nd ed.); *Kenyon v. Brightwell,* 120 Ga. 606, 609, 610; *Jenkins v. Tucker,* I H. Blackstone, 91, 94. As far as we are able to discover, there is no evidence at all in this respect. What may be a proper expense for the funeral of a wife of one husband may be wholly inappropriate for the funeral of a wife of another husband. The mere fact that the cost of the items for the funeral may be reasonable is not sufficient. In addition to proof of the reasonable cost of the items for the funeral, it must be shown that the funeral expenses were suitable and proper to the condition and station of

life of the husband. For example, according to the testimony in the case at bar, some caskets cost as much as $1,000. This may be a reasonable cost of some caskets, but before a husband could be held liable to pay for such a casket it would be necessary to show that the casket was suitable and proper to the condition and station of life of the husband.

For the reasons stated the judgment of the trial court is reversed and the cause remanded.

*Reversed and remanded.*

MATCHETT, P. J., and McSURELY, J., concur.